UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 20-CR-82-JED |
| ) | |
| RONALD ALEXANDER PAZ-RODRIGUEZ ) | |
| and EVA ESTRADA JUAREZ, ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER**

This matter comes before the Court on three motions. Defendant Ronald Alexander Paz-Rodriguez, joined by Defendant Eva Estrada Juarez, (*see* Doc. 38), moves to dismiss the indictment (Doc. 35) and to compel production of exculpatory evidence (Doc. 36). The government moves in limine to exclude certain evidence and argument at trial (Doc. 37). The Court conducted a hearing on the motions September 9, 2020.

**I.    BACKGROUND**

Mr. Paz-Rodriguez and his wife, Ms. Estrada Juarez, are accused of bringing Mr. Paz-Rodriguez's 15-year-old half-sister, D.Y.A., to the United States and then exploiting her labor. According to the Criminal Complaint (Doc. 1), the defendants gave D.Y.A. between $5,000 and $6,000 to pay a coyote to smuggle D.Y.A. from Honduras to the United States to live with them. After arriving in the United States in July 2019, the government granted D.Y.A. refugee status, with Mr. Paz-Rodriguez serving as her local sponsor.

Almost immediately, the government claims, Paz-Rodriguez forced D.Y.A. to serve as his housekeeper and full-time caretaker to his four children. The government alleges that the defendants did not pay her or enroll her in school, subjected her to physical and verbal abuse, and restricted her movement and access to immigration and identification documents.

The government further alleges that in November 2019, Mr. Paz-Rodriguez obtained false identification for D.Y.A. indicating that she was 19-years old and used it to get her a job at a local restaurant, where she earned about $800 per month. According to the government, the defendants confiscated her earnings in their entirety—$500 for debt service on the coyote's fee and $300 for room and board in their home.

Law enforcement arrested the defendants on January 9, 2020. Although initially charged in state court, the defendants were later indicted on the following federal offenses:

- Count 1, obtaining forced labor in violation of 18 U.S.C. § 1589(a);
- Count 2, benefiting from forced labor in violation of 18 U.S.C. § 1589(b);
- Count 3, holding another in involuntary servitude in violation of 18 U.S.C. § 1584(a); and
- Count 4, trafficking in forced labor in violation of 18 U.S.C. § 1590(a).

(*See* Doc. 13).

## II.   DISCUSSION

### A.   Motion to Produce (Doc. 36)

Defendants' Motion to Produce (Doc. 36) appears to have been resolved without the Court's intervention. At the hearing, counsel for Mr. Paz-Rodriguez stated that the purpose of the motion was to obtain certain documents related to D.Y.A.'s application for refugee status. The government was in the process of obtaining those documents, he said, so a ruling on the motion was no longer necessary. Because there no longer appears to be any dispute, the Court considers the motion moot.

### B.   Motion in Limine (Doc. 37)

In its motion in limine, the government seeks to prohibit the defendants from introducing evidence or argument "regarding any potential impact this case may have on the defendants' children." (Doc. 37 at 1). The government argues that "these issues are inadmissible, irrelevant, and overly prejudicial." (*Id.*).

A ruling on this motion would be premature at this point. The impact of a criminal case on a defendants' family is not ordinarily relevant, but the nature of the allegations in this case are such that *some* evidence regarding the defendants' domestic situation will be inevitable. For example, the defense appears poised to argue that, given the circumstances of the defendants' home life, their demands on D.Y.A. were reasonable. At some point, the defendants' efforts in this vein may cross the line into inappropriate appeals for sympathy from the jury; exactly where this line falls will depend on the context and cannot be predicted in advance. During the hearing the parties agreed that it would be appropriate to take the government's motion under advisement and rule on specific objections as the trial unfolds. Accordingly, the Court will take the motion under advisement.

### C.    Motion to Dismiss (Doc. 35)

The defendants argue that the indictment should be dismissed because all of the counts alleged are, for one reason or another, infirm. They contend that Counts 1 and 2 are "multiplicitous" because they allege "essentially the same crime"; that Count 3 fails to allege a crime at all; and, finally, that Count 4 is "duplicitous" because it charges two offenses in the same count.[1] (*See* Doc. 35 at 1–4). None of these arguments are persuasive.

#### 1.    Counts 1 and 2: Multiplicity

Counts 1 and 2 are not multiplicitous. "Multiplicity refers to multiple counts of an indictment which cover the same criminal behavior." *United States v. Frierson*, 698 F.3d 1267, 1269 (10th Cir. 2012). Multiplicitous counts are considered improper because they allow for multiple punishments of the same offense. *United States v. Barrett*, 496 F.3d 1079, 1095 (10th Cir.

---

[1]    Mr. Paz-Rodriguez's motion argues that Count 4 as "duplicitous" in the introduction but later describes the count as "multiplicitous." (*See* Doc. 35 at 1, 3). The reference to multipicity appears to have been in error, as the cases Mr. Paz-Rodriguez cites address the issue of duplicity. The Court therefore construes the motion as alleging duplicity.

3

2007). If "the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932); *see also United States v. Sturm,* 673 F.3d 1274, 1287 (10th Cir.2012) (same). Here, the defendants are charged in Count 1 with violating 18 U.S.C. § 1589(a) and in Count 2 with violating 18 U.S.C. 1589(b). Section 1589(a) provides as follows:

> (a) Whoever knowingly *provides or obtains* the labor or services of a person by any one of, or by any combination of, the following means--
> (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;
> (2) by means of serious harm or threats of serious harm to that person or another person;
> (3) by means of the abuse or threatened abuse of law or legal process; or
> (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint,
> shall be punished as provided under subsection (d).

18 U.S.C. § 1589(a) (emphasis added).

Section 1589(b), meanwhile, provides as follows:

> Whoever knowingly *benefits*, financially or by receiving anything of value, from participation in a *venture* which has engaged in the providing or obtaining of labor or services by any of the means described in subsection (a), knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any of such means, shall be punished as provided in subsection (d).

18 U.S.C.A. § 1589(b) (emphasis added).

Each provision clearly requires proof of a fact that the other does not. In order to prove a violation of subsection (a), the government must prove that the defendants knowingly obtained or provided labor through one of the prohibited means. In order to prove a violation of subsection (b), the government must prove that the defendants participated in and benefited from a "venture." In other words, a person can be guilty under subsection (a) even if he does not participate in a

venture, and a person can be guilty under subsection (b) even if he himself does not provide or obtain labor through prohibited means. Because each provision requires proof of a fact that the other does not, they punish two offenses, not one. Consequently, Counts 1 and 2 are not multiplicitous.

### 2. Count 3: Failure to State an Offense

An indictment is sufficient if it sets forth the elements of the offense charged, puts the defendant on fair notice of the charges against which he must defend, and enables the defendant to assert a double jeopardy defense. *United States v. Welch*, 327 F.3d 1081, 1090 (10th Cir. 2003). A motion to dismiss is generally only appropriate when it can be resolved without a trial on the merits of the allegations at hand. *See* Fed. R. Crim. P. 12(b)(1). The strength or weakness of the government's case, or the sufficiency of the government's evidence to support a charge, may not be challenged by a pretrial motion. *United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir. 1994). An indictment should be tested solely on the basis of the allegations made on its face, and such allegations are to be taken as true. *Id.* A limited exception permits a court to consider facts outside the indictment when the operative facts are undisputed, the government fails to object to the court's consideration of those facts, and the court can determine from the undisputed facts that the government, as a matter of law, cannot prove its case beyond a reasonable doubt. *United States v. Pope*, 613 F.3d 1255, 1260 (10th Cir. 2010).

Here, Count 3 alleges as follows: "From on or about July 1, 2019, through on or about December 13, 2019, in the Northern District of Oklahoma, the defendants, . . . aiding and abetting each other, did knowingly and willfully hold D.Y.A., a minor child known to the Grand Jury, to a condition of involuntary servitude for a term." (Doc. 13 at 4). As the operative language tracks the elements set out in the statute, 18 U.S.C. § 1584(a), and identifies the time, place, and victim of the alleged offense, Count 3 is sufficient on its face to allege involuntary servitude.

The defendants nevertheless argue that the government cannot state an offense for involuntary servitude because they were acting as D.Y.A.'s guardians and were therefore entitled to require her to contribute to the domestic economy. They contend that a person acting *in loco parentis* cannot be prosecuted for requiring a child to perform household chores or turn over wages to pay for room and board. (*See* Doc. 35 at 4, citing *U.S. v. Toviave*, 761 F. 3d 623 (6th Cir. 2014)). This argument is untenable.

*Toviave* does not stand for the proposition that those acting *in loco parentis* cannot, as a matter of law, be prosecuted on a charge of involuntary servitude for exploiting a child in their care. In *Toviave*, the defendant was convicted of forced labor in connection with his treatment of four young relatives that he brought to the United States from his native Togo. At trial, the evidence showed that he made the children do various work around the house and required them to babysit for his friends and relatives, turning over the proceeds to him. *Toviave*, 761 F.3d at 623–25. Although he was often abusive, he also made the children attend school, required them to do their homework, and hired a tutor to teach them English.

On appeal, the Sixth Circuit overturned the conviction. The court reasoned that, although the man had abused the children, the circumstances lacked several hallmarks of exploitation found in other forced labor cases. Unlike Mr. Toviave's relatives, the victims in those cases had been lured to the United States under false pretenses, made to work long hours, or held in extreme isolation. *Id.* at 629–30. Moreover, Mr. Toviave's demands had not exceeded what a parent or guardian could expect from a child. Consequently, the court concluded, the children's work had not crossed the line from household chores to prosecutable forced labor.

The allegations in this case tell a different story. The defendants allegedly never enrolled D.Y.A. in school and isolated her by confiscating her identification and immigration papers.

6

Moreover, unlike the father in *Toviave*, who took his children's babysitting money, the defendants in this case allegedly arranged formal employment for D.Y.A. and then confiscated her wages. Such a course of conduct exceeds the bounds of what one could reasonably expect in a parent-child relationship. Given these distinctions, *Toviave* provides no authority that would permit the Court to dismiss Count 3 of the indictment.

In sum, the defendants point to no case that would, as a matter of law, preclude their conviction based on the facts alleged. As a result, Count 3 of the Indictment will stand.

### 3.     Count 4: Duplicity

"A duplicitous indictment charges the defendant with two or more separate offenses in the same count." *United States v. Haber*, 251 F.3d 881, 888 (10th Cir. 2001). Among the concerns presented by duplicitous allegations is the possibility that a jury might convict the defendant on a count without reaching a unanimous agreement as to which offense provides the basis for conviction. *Id.*

Here, Count 4 accuses the defendants of labor trafficking under 18 U.S.C. § 1590(a). Specifically, the indictment alleges that the defendants

> did knowingly recruit, harbor, transport, provide, and obtain D.Y.A. . . . for labor and services in violation of Title 18, United States Code, Chapter 77, that is, involuntary servitude in violation of [18 U.S.C. § 1584], and forced labor in violation of [18 U.S.C. § 1589].

(Doc. 13 at 5). The defendants argue that these allegations are duplicitous because the count "references violations of both 18 U.S.C. § 1584 and 18 U.S.C. § 1589." (Doc. 35 at 4). Although the defendants do nothing to develop their argument, the thrust of their objection seems to be that it would be impossible to know whether the jury unanimously found for either of the predicate offenses.

The Court generally agrees that, by referencing two potential predicate offenses, there could be confusion over whether the jury's verdict was truly unanimous. A person violates § 1590(a) when he "knowingly recruits, harbors, transports, provides, or obtains by any means, any person for labor or services in violation of this chapter." 18 U.S.C. § 1590(a). Thus, an element of labor trafficking is the violation of some other offense established in "this chapter," (i.e., Chapter 77 of Title 18 of the United States Code). In this case, Count 4 alleges two predicate violations: involuntary servitude under § 1584 and forced labor under § 1589. The potential for confusion exists because each of the individual jurors might believe that the victim was subjected to *one* of the predicate offenses even as the jury as a whole fails to reach unanimity as to either of them.

This issue is not fatal for Count 4, however. If the jury is given a limiting instruction that it must find unanimously for either involuntary servitude or forced labor, any potential harm would be cured. *See United States v. Weller*, 238 F.3d 1215, 1220 (10th Cir. 2001). In addition, the use of a verdict form separating findings as to each of the predicate offenses will further diminish any risk of confusion. Consequently, the Court declines to dismiss Count 4.

### III.   Conclusion

For the reasons explained above, the Court orders as follows: Defendants' Motion to Produce (Doc. 36) is **moot.** The government's Motion in Limine (Doc. 37) is **taken under advisement.** Defendants' Motion to Dismiss (Doc. 35) is **denied.**

SO ORDERED this 18th day of September, 2020.

_____
JOHN E. DOWDELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT